_____

SHEILA K. BEN, ESQ., as Court Appointed Guardian
of the Property of JANE DOE, (an infant proceeding
under an assumed name), an Infant under the age
of 14,

                                  Plaintiff,               **DECISION AND ORDER**

-vs-

                                                    5:14-CV-0370 (CJS)

UNITED STATES OF AMERICA,

                                Defendant.

_____

SUSAN DOE (as Guardian and Executrix proceeding
under an assumed name) as the Court Appointed
Guardian of the Person and Property of JANE DOE,

                                  Plaintiff,

-vs-                                              5:14-CV-0509 (CJS)

UNITED STATES OF AMERICA,

                                  Defendant.

_____

## INTRODUCTION

This is an action against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ("FTCA"), seeking damages, for personal injuries and wrongful death, caused by a federal pre-trial releasee, David Renz ("Renz"), who, after being charged with receiving and possessing child pornography, was released from custody under the supervision of U.S. Probation and Pretrial Services Office for the Northern District of New York ("Probation"), in Syracuse, New York. While on supervised release, Renz committed crimes including kidnapping, rape and murder. Plaintiffs maintain that Renz was able to commit those crimes because Probation was negligent in supervising him. Now before the Court is Defendant's motion to dismiss, or in the alternative, for summary judgment. The application is granted as to the negligent training and supervision claims but is otherwise denied.

In the course of committing the criminal acts which led to this action, Renz randomly kidnapped Lori Bresnahan ("Bresnahan") and an eleven-year-old child ("the child") from a shopping mall in Syracuse. Renz proceeded to sexually assault the child in Bresnahan's presence, and then murdered Bresnahan in the child's presence. Circumstances suggest that Renz also intended to murder the child, but before Bresnahan succumbed to Renz's attack she enabled the child to escape from Renz. These events took place on March 14, 2013, beginning at approximately 7:45 p.m.[2] However, the pertinent facts of this case begin many years earlier.

In or about 1998, when Renz was fifteen years old, he had sexual contact[3] with a nine-year-old female child on multiple occasions. Renz was subsequently charged in Family Court with committing acts which if committed by an adult would constitute Sexual Abuse in the First Degree, Penal Law § 130.65, and Endangering the Welfare of a Child, Penal Law § 260.10.[4] Renz was placed on probation, apparently after having been adjudicated a juvenile delinquent. Significantly, it appears that Renz's Family Court file was sealed pursuant to New York's Family Court Act ("FCA") § 375.2.[5] With regard to such sealing, the

---

[1]Except as otherwise noted the following facts are taken from documents that were either attached to, or incorporated by reference into, the Complaints in this action. The Court has also taken judicial notice of certain publicly available court records. Apart from these sources, the Court has briefly referred to information taken from an Onondaga County Family Court file, which is outside of the pleadings, though the Court does not consider such information in connection with the 12(b)(6) aspect of Defendant's motion.

[2]*See*, Complaint, 14-CV-0370, Docket No. [#1] at ¶ ¶ 53-61.

[3]*See*, New York Penal Law § 130.00(3) ("'Sexual contact' means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing, as well as the emission of ejaculate by the actor upon any part of the victim, clothed or unclothed.").

[4]*See*, 5:14-CV-0370, Docket No. [#39-9], sealed Exhibit I at p. 14.

[5]The portion of the Family Court file that is before this Court deals primarily with the details of the sexual abuse. The documents contain no specific details about Renz's subsequent juvenile delinquency adjudication or how the matter came to be sealed, though it seems undisputed that he was adjudicated a

Court takes judicial notice that the FCA allows other courts to have access to such sealed records in only one circumstance:  when the former juvenile delinquent is later *sentenced* as an adult following a conviction for a different crime. *See*, FCA § 381.2 ("[A]nother court, in imposing sentence upon an adult after conviction may receive and consider the records and information on file with the family court[.]").[6]  Renz's probation ended on March 17, 2001.

On June 3, 2012, the Federal Bureau of Investigation ("FBI") notified Renz that it was investigating him for child pornography.  Approximately six months later, on January 9, 2013, the Government arrested Renz and charged him with receipt and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and 18 U.S.C. § 2252A(a)(5)(B). The Court takes judicial notice of the fact that those crimes were felonies under Chapter 110, and were therefore classified as "crimes of violence" under the Bail Reform Act. *See*, 18 U.S.C. § 3156(a)(4)(c).   Attached to the criminal complaint was a supporting affidavit of an FBI agent indicating that at the time of Renz's arrest, Renz admitted that he had been downloading and viewing child pornography for six years.  The FBI agent's affidavit further indicated that Renz possessed over 500 video files and 3,000 image files of child pornography.

Renz's case was assigned to the Honorable Andrew T. Baxter, United States Magistrate Judge.  The Government moved to detain Renz, and Judge Baxter scheduled a detention hearing for January 14, 2013.   On January 10, 2013, prior to such hearing, Senior U.S. Probation Officer Ellen Phillips ("Phillips"), prepared a Pretrial Services Report

---

juvenile delinquent and placed on probation, and that his case was sealed.

[6]*See also, People v. Campbell*, 98 A.D.3d 5, 12, 946 N.Y.S.2d 587, 592 (2012) ("[T]he sole statutory exception to the confidentiality provisions of Family Court Act § 381.2 permits consideration of records and information relating to a juvenile delinquency adjudication by a court in imposing sentence upon an adult."), *leave to appeal denied*, 20 N.Y.3d 853 (2012).

("PSR").  The PSR asserted that Renz "pose[d] a risk of danger," in part because he had a "History/Charge Involving a Child."  In that regard, the PSR stated:

> The defendant's rap sheet indicates he was on probation which ended on March 17, 2001.  His mother explains when he was about 15 years old, he was 'implicated' in a sex offense.  She states a friend of the defendant's engaged in sexual intercourse with a female child.  She does not believe Renz had any contact with the minor, but he was implicated and was placed on probation supervision.

Apart from referencing the conversation with Renz's mother, the PSR does not detail any efforts that Phillips made to investigate the reason why Renz had been on probation.[7]  The Court observes, though, that Probation Officers have an ongoing duty to investigate, verify and supplement information about a defendant's criminal history.[8]

In any event, despite indicating  Renz posed a risk of danger, the PSR indicated that there were conditions of release which the Court could impose that would help to mitigate any risk of danger to the community, including "a curfew monitored by electronic monitoring."

Based upon the PSR, the U.S. Attorney's Office withdrew its request to have Renz detained, and agreed that he could be released on conditions.[9]  Judge Baxter similarly agreed that he would follow the PSR's recommendation and release Renz on various conditions, including  a prohibition on using any computer or other device with online capability, and a curfew with electronic monitoring.[10]  The electronic monitoring condition

---

[7]Outside of the pleadings, Phillips has provided an affidavit indicating that in connection with preparing the PSR, she "emailed the Onondaga County Probation Office in an attempt to learn more," but a "representative there informed [her] that Renz was on probation due to a juvenile offense [and] that more information could not be disclosed because it was a sealed Family Court file."Case No. 14-CV-0370, Docket No. [#22].   Plaintiffs dispute whether Phillips made such an inquiry, though as yet they have not had an opportunity to conduct discovery on that point.

[8]Guide to Judiciary Policy Vol. 8C, § 420.10.40.

[9]Case No. 14-CV-0370, Docket No. [#39-7] at p. 6.

[10]Because of the nature of Renz's crime against the minor child, a curfew and electronic monitoring were both required by law. 18 U.S.C. § 3142(c)(1)(B).

required Renz to wear an electronic ankle bracelet that sent out at least two types of alerts: tamper alerts and no-motion alerts. The bracelet issued a tamper alert when it was jarred with sufficient force[11] or when the clasp was tampered with, and issued no-motion alerts when the bracelet remained motion-less for a specified period of time. With regard to the curfew and electronic monitoring, Judge Baxter told Renz:

> [Y]ou're going to have a curfew that will require you to be home between 9 p.m. and 7 a.m. . . . Your curfew is going to be monitored by electronic monitoring and you need to make sure that you don't do anything to try to tamper or interfere with that pretrial monitoring[.][12]

Judge Baxter further cautioned Renz, by stating: "Trust me, I am deadly serious that any deviations of any of these conditions, you're going to find yourself back here and likely be back in jail."[13]

It thereupon became Probation's responsibility to supervise Renz and to monitor his compliance with the conditions of release in accordance with written policies established by the Judicial Conference of the United States, as set forth in the *Guide to Judicial Policies and Procedures*. Renz's case was assigned to Probation Officer Steven Acquilano ("Acquilano"), who was supervised by Supervisory Probation Officer Lori Albright ("Albright") and Chief Probation Officer Matthew Brown ("Brown").

In pertinent part, the *Guide to Judicial Policies and Procedures* required Probation to do the following: develop a written supervision case plan for each defendant;[14] inspect electronic monitoring equipment at least once per month;[15] conduct daily review of electronic

---

[11]*See*, 14-CV-0370, Docket No. [#39-10] at p. 8

[12]Case No. 14-CV-0370, Docket No. [#39-7] at p. 9.

[13]Case No. 14-CV-0370, Docket No. [#39-7] at p. 11.

[14]Judiciary Policy Vol. 8C, § § 420.40.50 - 420.40.60

[15]Judiciary Policy Vol. 8F § 563.

monitoring activity reports for each defendant;[16] receive immediate notification of electronic monitoring tamper alerts;[17] conduct immediate investigation of tamper alerts;[18] and provide a report to the court concerning any violation of the court-imposed conditions.[19] Overall, probation officers conducting pretrial supervision were required to "respond immediately to any conduct or condition of the defendant that relates to nonappearance or danger, regardless of when it occurs."[20]

However, Probation did not follow those procedures in Renz's case. More specifically, Probation did not develop a supervision plan for Renz, did not inspect Renz's electronic monitoring equipment (except perhaps on one occasion), and did not monitor Renz's tamper alerts as required[21] even though tampering with "location monitoring" equipment is considered a "higher-risk violation."[22]

At all relevant times, tamper alerts were transmitted by a defendant's bracelet to the vendor of the electronic monitoring equipment, which then provided notification to Probation in two ways: by direct notification and by notification on a website. More than two years prior to Renz's arrest, Probation had waived direct notification of tamper alerts lasting less than five minutes, at the suggestion of the vendor of the electronic monitoring equipment,

---

[16]Judiciary Policy Vol. 8F § 536.

[17]Judiciary Policy Vol. 8F § 543(c).

[18]Judiciary Policy Vol 8C § 730.10, Vol. 8F § 546.

[19]Judiciary Policy Vol. 8C § § 710.10(d) & 740.10, Vol. 8F, § 546(e).

[20]Judiciary Policy Vol. 8C, § 410(e).

[21]*See*, 14-CV-0370, Docket No. [#39-10], at pp. 1-4, report of Chief Judge Gary L. Sharpe. Renz testified at deposition that Probation Officer Acquilano inspected the ankle bracelet briefly on one occasion after receiving a tamper alert, but he failed to detect any problem because Renz had reassembled the device.

[22]Guide to Judiciary Policy, Vol. 8C § 730.10(b).

ostensibly to cut down on the number of false alarms.[23]  Consequently, Probation and the vendor agreed that Probation would not receive direct notification of tamper alerts lasting less than five minutes, though notice of such alerts was still available to Probation on the vendor's website.  In Renz's case, though, Probation never checked the website, and consequently it was unaware of tamper alerts lasting less than five minutes.

As a result, Probation, and more importantly, Judge Baxter, was unaware that, beginning on January 15, 2013,  Renz's ankle bracelet sent out a series of approximately forty (40) tamper alerts lasting less than five minutes.[24]  Renz's ankle bracelet also sent out several tamper alerts lasting more than five minutes, about which Probation received notification.  Specifically, between February 14, 2013 and March 15, 2013, Probation received seven tamper alerts lasting more than five minutes.[25]  However, despite receiving such notifications, Probation did not inspect Renz's ankle bracelet or notify Judge Baxter.  Instead, on one occasion Acquilano verbally directed Renz to leave the bracelet alone.

On the evening of March 14, 2013, while Renz was supposed to be at home pursuant to his curfew, he instead removed the electronic bracelet, traveled to a nearby shopping mall, kidnapped Bresnahan and the child using a knife and a BB gun pistol, and, after tying up Bresnahan, proceeded to rape the child and stab Bresnahan to death. All of the acts of sexual assault and murder occurred inside Bresnahan's automobile.  A subsequent search of Renz's home indicated that while on supervised release he had continued to amass a collection of child pornography, in violation of the law and the conditions of his supervised

---

[23]Probation and the vendor agreed that the Syracuse Probation Office would temporarily waive notification of tamper alerts lasting less than five minutes, with the understanding that they would revisit the issue when that office received new electronic monitoring equipment, which was scheduled to occur within a few months.  However, it appears that Probation and the vendor never revisited the issue even after the new equipment arrived. See, Case No. 14-CV-0370, Docket No. [#39-10] at p. 4 (AO Report)

[24]See, Case No. 14-CV-0370, Docket No. [#39-10] at p. 9 (AO Report).

[25]See, Case No. 14-CV-0370, Docket No. [#39-10] at p. 9 (AO Report).

release.[26]  It also became apparent that the manner in which Renz carried out the sexual assault on the child closely mimicked a depiction of a sexual assault of a child in his pornography collection.[27]

PROCEDURAL HISTORY

Upon Bresnahan's death,  Onondaga County Surrogate's Court appointed Plaintiff Susan Doe ("Executrix Doe") as Executrix of Bresnahan's estate and guardian of the child. Surrogate's Court also appointed Plaintiff Sheila K. Ben ("Ben") as guardian of the child's property.  Subsequently, Ben, as Guardian of the child's property, and Executrix Doe, as both Executrix of Bresnahan's estate and Guardian of the person and property of the child, commenced the two subject essentially-identical actions, seeking to recover damages under the FTCA and 42 U.S.C. § 1983 for injuries to the child and Bresnahan, and for Bresnahan's wrongful death.  Plaintiffs commenced the action in the United States District Court for the Northern District of New York.  However, the undersigned, a Senior District Judge of the U.S. District Court for the Western District of New York, was assigned to preside over the actions after all of the District Judges in the Northern District recused themselves.

Initially, Plaintiffs sued the United States, the U.S. Probation and Pretrial Services Office for the Northern District of New York, Brown, Albright, Phillips and Acquilano.  Now, pursuant to a stipulated Order, the two actions are consolidated for purposes of discovery and trial, and claims against all defendants except the United States are discontinued.[28]

Additionally, upon further clarification from  Onondaga County Surrogate's Court, the parties have stipulated to the amendment of the pleadings, such that Ben is pursuing claims relating only to the child's injuries, and Executrix Doe is only pursuing claims for Bresnahan's

---

[26]See, Case No. 14-CV-0370 Docket No. [#1], Complaint ¶ 133; see also, Case No. 13-CR-0143, Docket No. [#61] at p. 5.

[27]See, Case No. 13-CR-0143, Docket No. [#61] at p. 4

[28]See, case no. 5:14-CV-0370 (CJS) docket no. [#35].

wrongful death and for her conscious pain and suffering prior to her death. Executrix Doe has also discontinued her Section 1983 claims,[29] and consequently, the only claims remaining in this action are under the FTCA. More specifically, Plaintiffs are asserting the following claims: 1) negligence resulting in injuries to the child; 2) negligent infliction of emotional distress ("NIED") resulting in injuries to the child; 3) wrongful death as to Bresnahan; 4) negligence resulting in conscious pain and suffering by Bresnahan prior to her death; and 5) NIED resulting in injuries to Bresnahan. It is undisputed that in accordance with the FTCA, the substantive claims are governed by the law of the State of New York, since the claims arose in New York. 18 U.S.C. § 1346(b)(1).

In lieu of answering the Complaint, Defendant filed the subject motion to dismiss, or, in the alternative, for summary judgment. Defendant's memorandum of law consists of points I-VII. Now, however, as a result of the aforementioned stipulations, certain aspects of Defendant's motion are moot. Namely, points I, II, and VII of Defendant's brief are moot. The remaining four points of Defendant's motion are as follows: III) the Court's jurisdiction over the claims for negligent supervision and training is barred by the FTCA's "discretionary function exception"; IV) the Court lacks jurisdiction over the negligence claims and/or the claims lack merit because Defendant owed no duty to the child or Bresnahan, or, if such a duty was owed, the injuries to Bresnahan and the child fall outside the scope of such duty; V) the claims for negligent supervision and training lack merit under New York State law, since it is undisputed that the individual Probation employees were acting within the scope of their employment; and VI) the NIED claims lack merit under New York State law, since the alleged misconduct was not sufficiently extreme or outrageous. The motion to dismiss as to Point III is based on Rule 12(b)(1); the motion to dismiss as to Point IV is based on Rule 12(b)(1) and Rule 12(b)(6); and the motion to dismiss as to Points V and VI is based

_____

[29]*See*, case no. 5:14-CV-509, Docket no. [#40] at ¶ 10.

on Rule 12(b)(6). *See*, Def. Memo of Law [#24] at pp. 10-11.

Plaintiffs counter that they have sufficiently pleaded claims for negligence, including negligent training and supervision, wrongful death, and NIED. Plaintiffs also request, with regard to Defendant's alternative motion for summary judgment, that the Court deny the application pursuant to Fed.R.Civ.P. 56(d), since no discovery has taken place in this action.

DISCUSSION

Defendant's motion is made pursuant to Rule 12(b)(1), Rule 12(b)(6) and, alternatively, Rule 56. At the outset, though, the Court denies Defendant's alternative Rule 56 application as premature, since no discovery has taken place. In that regard, while Plaintiffs and Defendant each submitted some materials outside of the pleadings, Plaintiffs have also asked the Court to deny the summary-judgment aspect of Defendant's motion pursuant to Rule 56(d). Although Plaintiffs have not submitted a separate Rule 56(d) affidavit,[30] they have specified certain types of discovery that they believe would establish that Defendant owed a duty to the victims. *See*, Pl. Memo of Law at p. 46. Further, it is well-settled that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (citations omitted) ; *but see, Young v. Benjamin Dev. Inc.*, No. 09–1320–cv, 395 Fed.Appx. 721, 722–723, 2010 WL 3860498 (2d Cir. Oct.5, 2010) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. Nonetheless, we conclude that the district court committed no error in this case because Young failed to file an affidavit setting forth the essential facts he sought to discover.")

---

[30]Ordinarily, to avoid summary judgment under Rule 56(d) the nonmoving party must submit an affidavit or declaration explaining what discovery he needs, and how such discovery will create a triable issue of fact. *See*, FRCP 56(d) (Formerly 56(f), requiring the nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion)

(citation omitted). Since this action is in its earliest stage, the Court denies Defendant's alternative request for relief under Rule 56 as premature, and will only consider the sufficiency of the Complaint under Rules 12(b)(1) and 12(b)(6).

With regard to the 12(b)(1) application, the standard to be applied in pertinent part is as follows:

> In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists.

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citations and internal quotation marks omitted). In the instant case, Defendant is not challenging Plaintiffs' factual assertions pertaining to subject-matter jurisdiction, but rather, is challenging the legal sufficiency of those allegations.[31] In other words, Defendant maintains that even assuming the truth of Plaintiffs' factual allegations, this Court lacks jurisdiction. Consequently, when evaluating Defendant's 12(b)(1) motion, the Court must accept the allegations in Plaintiff's complaint and draw all reasonable inferences in Plaintiffs' favor.

With regard to Defendant's motion to dismiss for failure to state a claim, the general legal principles concerning motions under FRCP 12(b)(6) are well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which

---

[31]"In a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (citations omitted).

it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).[32]

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint,[33] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

---

[32]It is of course well-settled that in resolving a 12(b)(6) motion, the Court is limited as to what it can consider. *See, Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y. Sep.24, 2012). (On a 12(b)(6) motion, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' " *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (*quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).").

[33]The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. den.* 531 U.S. 1052, 121 S.Ct. 657 (2000).

possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted). "The application of this 'plausibility' standard to particular cases is 'context-specific,' and requires assessing the allegations of the complaint as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (citation and internal quotation marks omitted).

### Negligent Training and Supervision

The Complaints do not assert discrete claims specifically designated as "negligent training and supervision." Instead, the Complaints maintain that Brown, Albright, Phillips and Acquilano were negligent in various ways, and that such negligence included failures to properly train and supervise the staff of the Syracuse Probation Office. Thus, the negligent training and supervision claims are one aspect of Plaintiffs' overall theory of negligence. Defendant asserts that the negligent training and supervision aspects of Plaintiffs' claims must be dismissed for two reasons. First, Defendant maintains that this Court lacks subject-matter jurisdiction over such claims, since they fall under the "discretionary function" exception of the FTCA.[34] Second, Defendant contends that even if the Court has jurisdiction over such causes of action, New York State law does not permit negligent training and supervision claims where a tort is committed by an employee acting within the scope of his employment. Here, it is undisputed that Brown, Albright, Phillips and Acquilano were all acting within the scope of their employment. The Court will consider each of these points in turn.

### The FTCA's Discretionary Function Exception

---

[34]Defendant does not assert that all of Plaintiffs' claims are jurisdictionally barred by the"discretionary function" exception; rather, Defendant only raises the "discretionary funciton" argument with regard to the negligent training and supervision claims.

With regard to the jurisdictional claim, Plaintiffs are attempting to sue the United States of America, which, of course, enjoys sovereign immunity from being sued, except insofar as it consents to be sued. Moreover, even in situations in which the United States consents to be sued, a court's jurisdiction is limited by the terms of the Government's consent. *See, Hercules Inc. v. U.S.*, 516 U.S. 417, 422, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996) ("The United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citations and internal quotation marks omitted). In other words, the United States decides when and how it can be sued.

Under the FTCA, the United States has consented to be sued under certain conditions, but has expressly declined to be sued "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [was] abused." 28 U.S.C.A. § 2680(a) (Westlaw 2015). This "discretionary function exception"

> is a form of retained sovereign immunity. As a result, the FTCA's waiver of federal sovereign immunity does not encompass actions based upon the performance of, or failure to perform, discretionary functions. Because the FTCA is structured as a grant of subject matter jurisdiction to the federal courts, a finding that the discretionary function exception applies is tantamount to holding that the court lacks jurisdiction.[35] The exception applies only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis.

*Reichhart v. U.S.*, 408 Fed.Appx. 441, 443, 2011 WL 286190 at *1 (2d Cir. Jan. 31, 2011) (citations and internal quotation marks omitted). A plaintiff "bear[s] the initial burden to state

---

[35]*See also*, *Molchatsky v. United States*, 713 F.3d 159, 161-163 (2d Cir. 2013) (Indicating that if the discretionary function exception applies, the Court lacks subject matter jurisdiction..

a claim that is not barred by the [discretionary function exception]." *Molchatsky v. U.S.*, 713 F.3d at 162.

In determining whether the allegedly-negligent acts "involved an element of judgment or choice,"

> it is the nature of the conduct, rather than the status of the actor that governs whether the exception applies. The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,  because the employee has no rightful option but to adhere to the directive.

*U.S. v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273 (1991) (citations and internal quotation marks omitted); *see also, Berkovitz v. U.S.*, 486 U.S. 531, 544, 108 S.Ct. 1954, 1963 (1991) ("When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply.").  The aforementioned reference to "statute, regulation or policy" includes internal "agency guidelines." *U.S. v. Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273.

> Furthermore, even assuming the challenged conduct involves an element of judgment, it [must then be] decided whether that judgment is of the kind that the discretionary function exception was designed to shield.  Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy.

*U.S. v. Gaubert*, 499 U.S. at 322-323, 111 S.Ct. at 1273-1274 (citations and internal quotation marks omitted).  Where the alleged "type of negligence" arises from factors such as inattentiveness, laziness, absentmindedness or other such "conduct unrelated to any plausible policy objectives," it is not shielded by the discretionary function exception. *Coulthurst v. U.S.*, 214 F.3d 106, 110-111 (2d Cir. 2000); *see also, Id.*, 214 F.3d at 109

("Such negligent acts neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental policy.").

In the instant case, the alleged negligent acts involve failures by Probation to properly supervise and monitor Renz. In that regard, Plaintiffs' pleadings specifically allege that Probation not only violated Judge Baxter's Order setting conditions of release, but acted "in total disregard of the rules, regulations, procedures, policies and guidelines . . . provided by The Guide to Judiciary Policy and the relevant Government Monographs that speak to the proper methods of pre-trial electronic monitoring, supervision and control of criminal defendants." Complaint (Case No. 5:14-cv-00370, Docket No. [#1]) ¶ 12. For example, the Complaint contends that

> the Probation Office's practice of waiving affirmative notice of tamper alerts (under the five minute rule) was a departure from the rules, regulations, policies and procedures set forth in The Guide to Judiciary Policy, Volume 8F, § 543(c), that requires immediate notification of all tamper alerts, regardless of [the duration of the alert].
>
> ***
>
> [T]he Probation Office's failure to develop a case plan and to provide formal supervisory oversight in the Renz case was inconsistent with, and a departure from, a number of national policies, including The Guide to Judiciary Policy, Volume 8C, § 420.40.60(b) and § 420.40.50(a). Additionally, the complete lack of coordination or supervision with specialist officers within the USPO was contrary to, and a departure from, the Guide to Judiciary Policy, Volume 8C, § 240[.]

Complaint ¶ ¶ 97, 113; *see also, id.* at ¶ 141 (reiterating all of the alleged violations of Probations's rules and procedures).

Further, Plaintiffs allege that Judge Baxter's Order, as well as Probation's own rules, regulations, procedures, policies and guidelines, were mandatory in nature, and that the subject employees therefore had no discretion to disobey them. *See, e.g.*, Complaint ¶ 99 ("These actions/inactions . . . constituted a ministerial violation of the mandatory rules,

regulations, policies and procedures of the USPO."); ¶ 123 ("Upon information and belief, all of the [probation employees'] actions or inactions complained of herein were ministerial in nature, and none involved the use of discretion, in that said actions clearly and unequivocally violated the ministerial rules, regulations, policies and procedures of the Federal Probation Office, The Guide to Judiciary Policy, and such other well established rules, regulations, policies and procedures of the Federal Probation Office."); ¶ 143 ("[T]he acts/omissions of the [probation employees] were . . . not related, in any way to the use of discretion concerning the monitoring of [Renz]."). Consequently, Plaintiffs contend that the discretionary function exception does not apply.

Defendant disagrees and maintains that the discretionary function exception applies to all of the alleged negligence involving the training and supervision of Probation employees. Defendant, though, does not attempt to show that any particular action by supervisory Probation employees, in connection with Renz's supervision, falls under the discretionary function exception. Defendant does not argue, for example, that probation supervisors had discretion to allow their subordinates to violate the directives set forth in the Guide to Judiciary Policy. Rather, Defendant broadly argues that courts have "regularly held" that claims involving hiring, training and supervision fall under the discretionary function exception, and that "[P]laintiff[s have] not alleged any facts suggesting that defendant's hiring, retention, training and supervision practices fall outside the exception."[36]

The Court finds that it has jurisdiction over the negligent training and supervision claims. At the outset, to the extent Defendant contends that negligent training and supervision claims are *always* covered by the discretionary function exception, the Court disagrees. *See, Riascos-Hurtados v. U.S.*, 2015 WL 3603965 at *6 (S.D.N.Y. Jun. 5, 2015) ("Issues of employee hiring, training, supervision, and retention generally involve the

---

[36]Def. Memo of Law [#24] at pp. 20-21.

permissible exercise of policy judgment and fall within the discretionary function exception. However, it is not the case that all claims for negligent hiring or supervision are barred by the discretionary function exception.") (citations and internal quotation marks omitted); *see also, Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 121 (D. Conn. 2010) (In which the U.S. acknowledged that negligent training and supervision claims *could be* actionable under the FTCA in certain cases, but argued that the discretionary function exception applied based on the particular facts of the case.).

The Court also finds that Plaintiffs have carried their burden of demonstrating that their negligent training and supervision claims involve violations of rules that were mandatory, not discretionary. Specifically, in response to Defendant's motion, Plaintiff has submitted, *inter alia*, portions of the Guide to Judiciary Policy, and most notably Volume 8, Part C, Chapter 2, which discusses the roles of probation supervisors,[37] and chapters 3,4,5, and 7, which discuss the specific duties of probation officers. The Guide to Judiciary Policy indicates, for example, that probation supervisors are required to train their staffs to perform pretrial services supervision effectively, ensure that all staff are familiar with national and local rules and policies, and oversee the work of their staffs. The Guide to Judiciary Policy further indicates that probation officers are required to do certain things in every case, including the following: prepare and obtain the approval of a supervision plan; respond immediately to "all instances of noncompliance, no matter how minor"; investigate and document all instances of noncompliance; and "immediately advise the court and the United States attorney" if the defendant engages in a "higher risk" violations, including "repeated location monitoring violation[s]." Plaintiffs maintain that supervisors in the Syracuse Probation office violated all of those rules. Plaintiffs have also submitted a report from the Administrative Office of the United States Courts ("the AO"), which found that in connection

---

[37]*See*, Docket No. [#39-5] at pp. 8-11.

18

with the pretrial supervision of Renz, and regarding the matters about which Plaintiffs are complaining, supervisors in the Syracuse Probation Office violated a number of mandatory rules, such as by waiving notification of tamper alerts lasting less than five minutes and failing to "provide formal supervisory oversight."

For all of the foregoing reasons the Court finds that Plaintiffs have demonstrated that the discretionary function exception does not apply to the negligent training and supervision claims. Defendant's Rule 12(b)(1) application is therefore denied. Nevertheless, as will be discussed below, the Court finds that those claims must be dismissed on the merits pursuant to Rule 12(b)(6).

*New York State Law Concerning Negligent Training and Supervision*

Defendant has also moved to dismiss the negligent training and supervision claims on the merits under Rule 12(b)(6), on the grounds that a private person in the Government's position would not be liable for such claims under New York State law. It is clear that under the FTCA, for a claim arising in the State of New York, the Government will be liable only to the extent that an individual would be liable under New York's law of torts:

> A complaint states a cause of action under the FTCA if it presents a claim that is (1) against the United States, (2) for money damages, (3) for injury or loss of property, or personal injury or death (4) caused by the negligent or wrongful act or omission of any employee of the Government (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. With regard to the sixth requirement . . .[28 U.S.C.] § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA. Thus, the United States can be made a defendant under the FTCA only if its actions would render it liable under relevant state law.

*Shade v. Housing Authority of City of New Haven*, 251 F.3d 307, 314 (2d Cir. 2001) (citations and internal quotation marks omitted).

Defendant asserts that under New York law, claims for "negligent training and supervision" are barred where employees are acting within the scope of their employment. Defendant argues, therefore, that "to the extent that" Plaintiffs are attempting to assert claims for "negligent training and supervision," they cannot do so, since none of the subject Probation employees were acting outside the scope of their employment.[38]

Plaintiffs counter that the FTCA allows lawsuits based on the negligence of "any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 1346(b), and that, therefore, they should be able to maintain a claim based on the negligence of all of the probation employees involved in Renz's case, including negligence in failing to train and supervise other employees.[39]

The Court finds that Defendants have accurately stated the pertinent principle of New York State Law, which is that, "[w]here the acts of 'employees' are concerned, an employer can be held vicariously liable under principles of *respondeat superior* for acts committed *within* the scope of the employee's employment, or may be held directly liable for 'negligent hiring, retention, or supervision' for acts committed *outside* that scope." *Williams v. Boulevard Lines, Inc.*, No. 10 CIV. 2924 DF, 2013 WL 1180389, at *13, n. 10 (S.D.N.Y. Mar. 12, 2013) (citations omitted). Moreover, where a plaintiff is tortiously injured by an employee acting within the scope of his employment, courts routinely dismiss claims for negligent training and supervision as unnecessary, since the employer will be liable based on *respondeat superior* regardless of whether there was negligent training or supervision. *See, e.g., Bouet v. City of New York*, 125 A.D.3d 539, 541, 5 N.Y.S.3d 18, 20 (1st Dept. 2015)

---

[38] *See*, Def. Memo of Law [#24] at p. 41.

[39] *See*, Pl. Memo of Law at p. 47 ("Plaintiffs' negligent supervision and training claims allege the direct and independent negligence of USPO supervisors in failing to exercise due care in performing their duties as required . . . including participating in the development of a supervision plan for Renz, approving that plan, ensuring all alerts were responded to, and providing training to federal probation officers regarding the correct and adequate manner for investigating tamper and motion alerts.").

("[S]ince it is undisputed that the officers were acting within the scope of their employment when they failed to record the information regarding the vehicle that struck her and its operator, the claim of negligent hiring, training and supervision must fail."); *see also, Ruiz v. Cope*, 119 A.D.3d 1333, 1335, 989 N.Y.S.2d 211 (4th Dept. 2014) ("[T]he undisputed fact that defendant was acting within the scope of his employment should have precluded plaintiff as a matter of law from bringing a claim that the City was liable for the negligent training and supervision of defendant."). The rule is intended to weed out superfluous claims. *See, Karoon v. New York City Tr. Auth.*, 241 A.D.2d 323, 324, 659 N.Y.S.2d 27 (1st Dept. 1997) ("Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention. This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training.") (citation omitted). Thus, the only time a claim for negligent retention, training or supervision makes sense is when an employee tortiously injures someone while acting outside the scope of his employment, and the injured party cannot hold the employer vicariously liable in *respondeat superior* for the employee's tort, but may be able to hold the employer liable for its own negligence in retaining, training or supervising the employee.

In the instant case, Plaintiffs allege that Phillips was negligent in preparing the pretrial services report, and that Acquilano was negligent in supervising Renz. Plaintiffs further contend that Brown and Albright were negligent in supervising and/or training Phillips and Acquilano. However, it is evident that to the extent that Phillips or Acquilano was negligent,

they were acting within the scope of their employment and the United States will be liable for their negligence in *respondeat superior* regardless of whether Brown or Albright were negligent in supervising them. Accordingly, to the extent that Plaintiffs are asserting claims for negligent training or supervision by Brown and Albright, such claims must be dismissed as superfluous in accordance with New York State law.

Negligence

The central claim of these consolidated actions is that Federal Probation was negligent in supervising Renz. Since Plaintiffs are suing under the federal government under the FTCA, the Court must determine the closest private analog to Probation, and determine whether such private person would be liable under like circumstances pursuant to the law of New York State. Here, the parties agree that the closest private analog would be a person responsible for controlling the acts of a third party as described in Section 319 of the Restatement (Second) of Torts ("§ 319").

The issue, therefore, is whether Plaintiffs have plausibly pleaded a claim under § 319. The applicable legal principles are clear and undisputed:

> To prevail on a claim of negligence under New York law, a plaintiff must prove (1) a duty owed by the defendant to the plaintiff to use reasonable care, (2) breach of that duty by the defendant, and (3) injury to the plaintiff. In general, a defendant has no duty to control the conduct of a person to prevent him from causing harm to others. In certain circumstances, however, the law does impose such a duty. For example, a special relationship may exist between the defendant and a third person such that the defendant is required to control the third person to protect others. The Restatement of Torts provides some guidance as to when a special relationship exists for these purposes. It states that a person has a duty to control the conduct of a third person if:(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection. Restatement (Second) of Torts § 315 (1963–1964).
>
> ***

The Restatement also provides that "one who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement (Second) of Torts at § 319 (1963–1964). New York courts adhere to these principles.

*Rivera v. New York City Health & Hosps. Corp.*, 191 F. Supp. 2d 412, 417-18 (S.D.N.Y. 2002) (citations and footnotes omitted).

Defendant maintains that Plaintiffs' negligence claims must be dismissed because Probation had no *duty* to prevent Renz from harming his victims, and that even if Probation had such a duty, the injuries to Bresnahan and the child were outside the *scope* of such duty. The Court will consider each of these points in turn.

> *Duty*

"The question of whether a defendant owes a duty to a plaintiff or the public at large is a question of law for the court." *Rivera v. New York City Health & Hosps. Corp.*, 191 F. Supp. 2d at 418. With regard to a claim under § 319 alleging a failure to control a third party with known dangerous propensities, "the two requirements for triggering this duty are: (1) sufficient knowledge of the danger posed by the third person; and (2) sufficient ability to control the relevant conduct of the third person." *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 384 (E.D.N.Y. 2009).

In order to find that duty exists to use reasonable care to prevent a third party from injuring someone, the defendant must have some ability to control the third party:

As set forth in the Restatement (Second) of Torts, "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." (Restatement [Second] of Torts § 319.). ... The Restatement illustrations themselves--relating to hospitals caring for contagious or violent patients--suggest a relationship more closely akin to custody, as that section has in fact been applied by lower courts. Whatever else may be required,

however, at the minimum such a duty requires an existing relationship between the defendant and the third person over whom "charge" is asserted. ... By the same token, such a duty of necessity must be limited to conduct that defendant may reasonably control.

*D'Amico v. Christie*, 71 N.Y.2d 76, 88-89, 518 N.E.2d 896 (1987) (citations omitted). As the New York Court of Appeals has stated,

liability for the negligent acts of third persons generally arises when the defendant has authority to control the actions of such third persons. . . . [T]here exist special circumstances in which there is *sufficient authority and ability to control* the conduct of third persons that we have identified a duty to do so.

*Purdy v. Public Adm'r of County of Westchester*, 72 N.Y.2d 1, 8 (1988) (emphasis added). Accordingly, the issue is whether Pretrial Services had "sufficient authority and ability to control" Renz's activities that it would be appropriate to find that a duty exists as a matter of law.

The Court finds that because of the court-ordered relationship between Probation and Renz, Probation had sufficient authority and ability to control those aspects of Renz's behavior upon which Plaintiffs are relying to establish their claim. In that regard, it is helpful to review exactly what duty Plaintiffs are contending. Particularly, in response to Defendant's motion, Plaintiffs have stated:

Here, Plaintiffs allege that the Government negligently failed to exercise any care in supervising Renz's pretrial release, resulting in [the child's] and Bresnahan's injuries. . . . [Probation] owed a duty to [the child] and [Bresnahan] to exercise reasonable care in supervising Renz's conditional pretrial release[.] . . . [Probation] had the authority and obligation to *investigate the alerts, meet with Renz in person and examine the equipment to determine whether Renz ha[d] been tampering with it.* . . . Upon investigating and finding that Renz was tampering with or appearing to tamper with his ankle bracelet in violation of his conditional release, *all [Probation] needed to do, and was obligated to do, was notify the United States Attorney*

*and the Court of the events.* . . . Under the circumstances of this case, [Probation] plainly had the ability to control Renz's conduct by immediately *investigating the alerts it received and reporting Renz's conduct to the Judge*, who would have taken further action to protect the community, whether revoking Renz's release or employing alternatives, such as home arrest.

Pl. Memo of Law [#39-15] at pp. 24, 32,33 (emphasis added).[40]  Therefore, Plaintiffs are alleging that Probation had a duty by virtue of its control over Renz's conduct, which consisted of the ability to monitor Renz's ankle bracelet, investigate any alerts, and report any violations to the U.S. Attorney and/or the Court.[41]  In sum, Plaintiffs maintain that Pretrial Services had a duty to exercise reasonable care in supervising Renz's pretrial release, especially with regard to monitoring Renz's electronic ankle bracelet.[42]

Defendant contends, though, that Probation's ability to simply monitor Renz was insufficient to create a duty under Restatement § 319.  Rather, Defendant maintains that in order for a duty to exist, Probation would have needed the ability to arrest Renz.  Specifically, Defendant contends that in order to have "control" within the meaning of § 319, "the defendant must have the unilateral ability to detain the third person to prevent him from causing harm to others."[43]  Defendant contends that Probation thus lacked such "control," since it did not have the ability to unilaterally arrest Renz. *See*, 18 U.S.C. § 3154 (describing

---

[40]*See also*, Pl. Supplemental Brief at p. 8 ("[T]he specific duty that was breached was the Probation Office's duty to ensure that Renz complied with his pretrial release conditions, which included responding to all tamper alerts received by meeting with Renz in person, inspecting the equipment, documenting the alerts and notifying the judge of the alert[s].").

[41]As discussed further below, Plaintiff contends that the duty arises from this measure of control, in combination with Pretrial Services' knowledge of Renz's dangerous propensities.

[42]Plaintiff is not alleging that Pretrial Services breached a duty to arrest Renz or to otherwise physically take him into custody.  A defendant cannot establish the lack of duty by pointing to a duty other than the one the Plaintiff actually pleaded. *See, e.g., Splawnik v. Di Caprio*, 146 A.D.2d 333, 335-36, 540 N.Y.S.2d 615, 617 (1989) ("Here, the pleadings adequately allege that defendant supplied a dangerous instrumentality to someone he had reason to know was likely, because of her depressed mental state, to use it in a manner involving unreasonable risk of physical harm to herself. The duty alleged to have been breached by defendant is not, as defendant suggests, a specialized duty to prevent decedent's suicide.").

[43]Def. Memo of Law [#24] at p. 24.

the functions and powers of Pretrial Services).

Although the Court agrees that Probation lacked the ability to arrest Renz while he was on preterial release,[44] it does not agree that such fact means that Probation lacked sufficient control over Renz to establish a duty under § 319. Defendant asserts that any duty arising under Restatement § 319 must involve physically taking the third party into custody. However, that is not correct, since the "duty to control" referred to under § 319 may take different forms. *See, Avins v. Federation Employment and Guidance Service, Inc.*, 67 A.D.3d 505, 506, 889 N.Y.S.2d 34, 35 (1st Dept. 2009) ("[T]he [prior] negligent supervision claim was dismissed because it lacked allegations that FEGS had authority *to prevent Derr from leaving the facility or control his conduct while he was away from the facility*, such allegations being necessary to show a duty on the part of FEGS to protect members of the general public, such as plaintiff's child, from harm caused by a potentially dangerous resident of its facility. . . . [T]he present complaint does not allege that FEGS had the ability *to confine Derr to the facility or control his conduct while outside the facility*, and thus fails to correct the prior pleading deficiency.") (emphasis added).[45] For example, under § 319 there may a duty to warn others about the third party, a duty to keep the third person away from children, or a duty to simply supervise the third person to prevent him from injuring others.[46] Where the defendant has less-than-complete control over the third person, the duty may be more limited, but does not disappear completely. *See*, *Rivera v. New York City*

---

[44]Plaintiff has made only a conclusory allegation to the contrary.

[45]Notably, the emphasized language was taken from the Court of Appeals' decision in *Purdy*, wherein the Court indicated that the Defendant did not have the requisite power to control the third party because it did not authority to either prevent her from "leaving the premises or to control her conduct while she is off the premises." If Defendant is correct in asserting that "control" under § 319 of the Restatement must be custodial, then the Court of Appeals would not have needed to refer to any ability to control the third party while she was "off the premises."

[46]*See, Rausch v. McVeigh*, 105 Misc.2d 163, 431 N.Y.S.2d 887 (Sup.Ct. Albany County 1980) (Denying motion to dismiss § 319 claim for failure to supervise autistic adult who injured a visiting therapist).

*Health & Hosps. Corp.*, 191 F. Supp. 2d at 420-421(Observing that while a mental institution has less control over an outpatient, "its duty to prevent the patient from harming others is more limited," but "does not disappear.") (citation omitted) .

Defendant nevertheless contends that the instant case is analogous to cases involving injuries caused by voluntary *outpatients* of medical/psychiatric facilities, in which courts have found no duty under § 319. *See, Wagshall v. Wagshall*, 148 A.D.2d 445, 447, 538 N.Y.S.2d 597, 598 (2d Dept. 1989) ("In a voluntary outpatient treatment setting, a defendant clinic has been held to have no duty to control its patient's conduct.") (citations omitted); *but see, Padula v. County of Tompkins*, 303 A.D.2d 804, 805, 756 N.Y.S.2d 664 (3d Dept. 2003) ("[W]hile defendant's duty to prevent  Stagg from harming others was more limited because of her status as a voluntary outpatient, as opposed to being confined to a mental institution, it nonetheless was bound to properly monitor Stagg and take whatever reasonable steps were available to prevent her from harming others."). Defendant interprets those cases as meaning that there is no duty under § 319 unless the defendant has actual physical custody of the dangerous third person.  However, the Court disagrees, since it interprets those cases as holding that because the medical/psychiatric facilities did not have actual custody of the third parties, they had no other way of controlling the third parties' actions when they were away from the facilities.[47]  In other words, the medical/psychiatric facilities had no "relationship" of control with the third parties when they were away from the facilities.  The instant case is clearly distinguishable, since Probation had a relationship of control over Renz that did not require actual physical custody.

Specifically, Pretrial Services is an arm of the Court and had a court order authorizing and directing it to monitor Renz's activities.  Moreover, the pertinent statute indicates that

---

[47] *See, e.g., Cartier v. Long Island College Hospital*, 111 A.D.2d 894, 895, 490 N.Y.S.2d 602 (2d Dept. 1985) (Hospital had no duty to control man who drove while intoxicated and injured the plaintiff, where the driver "merely attended the hospital's out-patient alcoholism clinic and had not been admitted to the hospital.").

defendants who are granted pretrial release are "released into [Pretrial Services'] *custody*." 18 U.S.C. § 3154(3) & (5) (emphasis added). As part of such custody, Pretrial Services had around-the-clock electronic monitoring of Renz's whereabouts. Pretrial Services also had the ability to receive instantaneous notice if Renz tampered with the electronic bracelet. Further, if Pretrial Services had investigated the tamper alerts that it received, it could have initiated the process to have Renz quickly taken into physical custody. *See*, 18 U.S.C. § 3154(5); *see also, United States v. Brewster*, No. 99 CR 16, 1999 WL 294784, at *1 (E.D.N.Y. Mar. 16, 1999) ("Upon request of the Pretrial Services Agency, the defendant was ordered taken into custody."); *United States v. Hollender*, 162 F. Supp. 2d 261, 269 (S.D.N.Y. 2001) ("Electronic monitoring is not the equivalent of having a camera trained on an accused 24 hours a day. However, if . . . the monitoring works properly, Pretrial Services would be notified immediately should [the defendant violates his curfew], *and could obtain a warrant within the hour*.") (emphasis added). In light of Judge Baxter's warnings when he released Renz, it is reasonable to infer, at the pleading stage, that he would have revoked Renz's pretrial release if he had been informed that Renz was repeatedly tampering with his electronic monitoring bracelet.

In consideration of these facts, the Court finds, contrary to what Defendant has argued, that Pretrial Services possessed at least as much authority to trigger the process to have Renz detained as doctors in New York possess to have dangerous mental patients involuntarily committed. *See, Rivera*, 191 F.Supp.2d at 422-423 (Discussing the pertinent provision of the New York Mental Hygiene Law and concluding that, "New York law thus establishes that mental health providers have a duty to their patients, and they have a duty to third parties in certain circumstances, and they have mechanisms by which to seek to control patients, including outpatients, who are a threat to themselves or others.").

Having found that Defendant had sufficient control over Renz to support a duty under

§ 319, the Court will now consider whether, in addition, Defendant had sufficient notice of Renz's dangerous propensities. Section 319 of the Restatement (Second) of Torts applies where the defendant has knowledge of the third party's dangerous propensity. *See*, § 319 RESTATEMENT (SECOND) OF TORTS, Comment a. (Indicating that the section applies where "the actor has charge of a third person . . . who has a peculiar tendency so to act of which the actor from personal experience or otherwise knows or should know."). Defendant maintains that Probation did not have notice of Renz's dangerous propensities, since at the relevant time Renz had no criminal record and the crime for which he was charged did not involve contact with a minor. Defendant also points out that while Probation knew that Renz had been on probation for a family court matter involving a sexual offense against a minor, it had no information that Renz personally had contact with the child.

However, the Court finds that Plaintiffs have plausibly pleaded that Probation had sufficient notice of Renz's dangerous propensities to establish a duty under § 319. As already noted, Probation was aware that by law the crime with which Renz was charged was considered a crime of violence. Additionally, although Probation did not have access to Renz's Family Court file, it had sufficient information to conclude, as part of the Pretrial Services Report, that Renz posed a danger, due to a "History/Charge Involving a Child" and a "History/Charge Involving Sex Offense/Abuse." Additionally, Probation recommended in the Pretrial Services Report that Renz be prohibited from being around minors.

In sum, Plaintiffs have sufficiently pleaded that Probation had enough knowledge and control to establish a duty under § 319 to use reasonable care in supervising Renz.

### Scope

Defendant alternatively argues that even if Probation had a duty to use reasonable care in supervising Renz, the scope of such duty did not extend to the injuries caused to Bresnahan and the child, because such injuries were not a foreseeable result of the failure

to monitor Renz. Instead, Defendant maintains that the foreseeable risk of failing to monitor Renz was that he would abscond. *See*, Def. Memo of Law [#24] at p. 38 ("The foreseeable risk of the Probation Office's failure to respond to tamper alerts is that Renz would remove his ankle bracelet and abscond from the district[.] . . . [N]othing in Renz's background made it reasonably foreseeable that he would commit a violent sexual assault."). However, the Court disagrees and finds that Defendant has not demonstrated as a matter of law that the injuries to Bresnahan and the child were unforeseeable results of a failure to supervise a pretrial releasee with Renz's characteristics.

Under the law of New York State, "[t]he scope of the duty is limited to risks of harm that are reasonably foreseeable. Foreseeability is defined by actual or constructive notice [of the particular risk of harm]." *Qin Chen v. U.S.*, 494 Fed.Appx. 108, 2012 WL 2752723 (2d Cir. Jul. 10, 2012); *see also, Pulka v. Edelman*, 40 N.Y.2d 781, 783-784, 390 N.Y.S.2d 393 (1976) ("The principle expressed in *Palsgraf v. Long. Is. R.R. Co.* . . . is applicable to determine the scope of duty — only after it has been determined that there is a duty. . . . When a duty exists, nonliability in a particular case may be justified on the basis that an injury is not foreseeable. In such a case, it can thus be said that foreseeability is a limitation on duty.").

"In determining whether a particular harm or hazard is within the scope of the risk created by the actor's conduct, 'risk' must be understood in the broader sense of including all of those hazards and consequences which are to be regarded as normal and ordinary." Restatement (Second) of Torts § 281, Comment g.; *see also, Pinero v. Rite Aid of New York*, 294 A.D.2d 251, 252, 743 N.Y.S.2d 21, 22 (1st Dept. 2002) ("[T]he risk of injury as a result of defendant's conduct must not be merely possible, it must be natural or probable.").

"Although a plaintiff must show that the defendant reasonably could have foreseen the danger against which the defendant allegedly failed to guard, the plaintiff need not

demonstrate that the precise manner in which the accident happened, or the extent of injuries, was foreseeable." *Mays v. City of Middletown*, 70 A.D.3d 900, 902, 895 N.Y.S.2d 179, 182 (2d Dept. 2010) (citation and internal quotation marks omitted). On this point, the Restatement (Second) of Torts states:

> Where the harm which in fact results is caused by the intervention of factors or forces which form *no part* of the recognizable risk involved in the actor's conduct, the actor ordinarily is not liable. This is subject, however, to the qualification that where the harm which has resulted was itself within the risk created, the fact that it has been brought about in a manner which was not to be expected, or by the intervention of forces which were not within the risk, does not necessarily prevent the actor's liability.

*Id.*, § 281, Comment f. (emphasis added).

Here, the Pretrial Services Report indicated that Renz was charged with receipt and possession of child pornography, and that he "pose[d] a risk of danger" because of the nature of that charge, and because he had a "history/charge involving sex offense/abuse." Even though Renz had not yet been convicted of the child pornography charge, and even though Probation did not have an accurate understanding of the severity of Renz's prior sexual abuse of a child, Probation evidently understood that he posed a risk of sexually assaulting a child, since the Pretrial Services Report recommended, *inter alia*, that Renz be prohibited from "frequent[ing] places where persons under the age of 18 are likely to congregate," and from "hav[ing] any direct contact with a person under the age of 18." Based on these factors, Plaintiffs have plausibly alleged that Pretrial Services knew or should have known that a failure to exercise ordinary care in enforcing Renz's conditions of supervised release could result in a sexual attack on a child. Moreover, with regard to the injuries to Bresnahan, Plaintiffs point out that young children are usually accompanied by an adult, who would be within the zone of danger created by such an attack. Accordingly, the Court finds that Plaintiffs have plausibly pleaded that the injuries to Bresnahan and the

child were within the scope of Probation's duty under § 319 to exercise reasonable care in supervising Renz.

### Immunity for Preparing the Pretrial Services Report

Defendant also contends that it is immune from tort liability in connection with the preparation of the pretrial services report. In that regard, Plaintiffs maintain that Phillips was negligent in failing to investigate the details of Renz's Family Court offense. However, Defendant only raised this point for the first time in its reply brief, *see*, Def. Reply Memo [#45] at pp. 12-14, and accordingly the Court declines to reach the issue.

### Negligent Infliction of Emotional Distress

Defendant maintains that Plaintiffs have not pleaded claims for NIED, since such a claim must allege "extreme and outrageous conduct," while Plaintiffs have alleged only negligence. There is ample case authority for Defendant's contention. *See, e.g., Deak v. Bach Farms, LLC*, 34 A.D.3d 1212, 825 N.Y.S.2d 852 (4th Dept. 2006) ("A cause of action for *either intentional or negligent infliction of emotional distress* must be supported by proof of conduct by a defendant that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (emphasis added) (*citing Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dept. 1999)). However, the New York State Supreme Court, Appellate Division, Second Department, recently purported to clarify that "extreme and outrageous conduct" is not a required element of an NIED claim. *See, Taggart v. Costabile*, 14 N.Y.S.3d 388, 398 (2d Dept. Jun. 24, 2015) ("[W]e now clarify that, notwithstanding case law to the contrary, extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress. ") (Indicating that such ruling was consistent with both the decisions of the New York Court of Appeals and the New York Pattern Jury Instructions). Since the

issuance of *Taggart v. Costabile*, federal district courts in this Circuit have issued conflicting rulings as to whether New York NIED claim requires extreme and outrageous conduct. Compare, *Smith v. City of New York*, No. 14–CV–4982, 2015 WL 4008642 at *2 (E.D.N.Y. Jun. 30, 2015) (Weinstein, J.) (Indicating that "extreme and outrageous conduct" is an element of a NY NIED claim), *with Abdel-Karim v. EgyptAir Airlines*, — F.Supp.3d — , 2015 WL 4597555 at *18 (S.D.N.Y. Jul. 31, 2015) ("A New York state appellate court has recently clarified that 'extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress.'") (Koeltl, J.) (citing *Taggart v. Costabile*).   This Court will follow the ruling in *Taggart v. Costabile*, since it appears exhaustively researched, well-reasoned, and consistent with rulings of the New York Court of Appeals. *See, e.g., Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504, 448 N.E.2d 1332, 1334, fn. * (1983) (Indicating that "outrageous conduct causing mental disturbance" pertains to "an intentional tort," apparently referring to *intentional* infliction of emotional distress); *see also, Johnson v. State*, 37 N.Y.2d 378, 381, 372 N.Y.S.2d 638, (1975) (quoting PROSSER, TORTS 4th ed. as explaining that, unlike intentional infliction of emotional distress, negligent infliction of emotional distress does not involve "extreme[ly] outrage[ous]" conduct.); 86 *C.J.S. Torts* § 84 ("[U]nlike a claim for intentional infliction of emotional distress, a claim for negligent infliction of emotional distress does not require proof of outrageous conduct.").   Accordingly, Defendant's motion to dismiss the NIED claims, for failure to plead extreme and outrageous conduct, is denied.[48]

CONCLUSION

Defendant's application to dismiss is granted with regard to the negligent training and supervision claims, but is otherwise denied.  Defendant's alternative request for summary

---

[48]Defendant's reply brief raises additional points, including that NIED claims are "disfavored" by New York courts, and that such claims should be dismissed as duplicative where the plaintiff can obtain relief under a more traditional tort remedy.  However, the Court does not consider these arguments since they were not part of Defendant's initial motion.

judgment is denied without prejudice to renew once discovery is completed.

SO ORDERED.

Dated: Rochester, New York
       February 3, 2016          ENTER:


                                 /s/ Charles J. Siragusa
                                 CHARLES J. SIRAGUSA
                                 United States District Judge