UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Sheila K. Ben, Esq., as Court Appointed Guardian of the
Property of JANE DOE, (an infant proceeding under an
assumed name), an Infant under the Age of 14,

*Plaintiff*,

CASE NO. 5:14-CV-0370 (CJS)
**Action No. 1**

*vs.*

THE UNITED STATES OF AMERICA,

*Defendants*.

**<u>ATTORNEY DECLARATION</u>**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SUSAN DOE, (a Guardian and Executrix proceeding
Under an assumed name) as Executrix of the Estate of
Lori A. Bresnahan, Decedent,

*Plaintiff*,

CASE NO. 5:14-CV-509 (CJS)
**Action No. 2**

*vs.*

THE UNITED STATES OF AMERICA,

*Defendants*.

STATE OF NEW YORK       )
COUNTY OF ONONDAGA )          ss:

Michelle Rudderow, being duly sworn, deposes and states as follows:

1.      I am an attorney duly licensed to practice in the State of New York and am a

partner with Williams & Rudderow, PLLC, attorneys for Plaintiff Susan Doe, Executrix of the

Estate of Lori Bresnahan, Decedent.

2.      This Declaration is filed in support of Plaintiff's Motion seeking approval for the

settlement and dismissal of the above-captioned matter against the Defendant, United States of

America.

1

3.      The Notice of Motion for Wrongful Death Compromise, the Declaration of Michelle Rudderow (with exhibits) in support of the Wrongful Death Compromise, the Declaration of Plaintiff, Susan Doe (with exhibits) in support of the Wrongful Death Compromise, and a Proposed Order is now submitted for approval.

4.      It should be noted that this Motion is submitted jointly with that of Plaintiff Ben's Motion and/or Petition for Infant Compromise, including the Declaration of John C. Cherundolo, Esq. and Declaration of Sheila Ben, Esq., as well as any attached exhibits.  The settlement referenced herein is a global settlement made by the Defendant to both Plaintiff Susan Doe as the Executrix of the Estate of Lori Bresnahan and Plaintiff Sheila Ben as the Guardian of the Property of Jane Doe.  The global settlement is for damages sustained by the Estate of Lori Bresnahan for which Jane Doe is the sole beneficiary and for separate personal injuries sustained by Jane Doe.

5.      On April 26, 2013, Plaintiff Susan Doe was given Letters Testamentary and Guardianship by the Surrogate's Court for the County of Onondaga, State of New York. Annexed hereto as **Exhibit A** are copies of the aforementioned Letters Testamentary and Guardianship.  An Amended Decree was Ordered on January 29, 2015.  **Exhibit B.**

6.      Plaintiff Doe retained Williams & Rudderow, PLLC to prosecute all claims belonging to the Estate of Lori Bresnahan on or about March 4, 2014.  Annexed hereto as **Exhibit C** is a copy of the Retainer Agreement.

7.      After more than four (4) years of litigation, through numerous depositions, multiple conferences, meetings and mediations, Plaintiffs now come before this Court, seeking approval for settlement and dismissal against the United States of America upon payment of the total sum amount of Five Million Dollars ($5,000,000.00).

## PROCEDURAL HISTORY

8.      Plaintiff filed a Complaint with the Clerk for the Northern District of New York on May 1, 2014.  5:14-cv-509, Dkt. 1.

9.      Defendant United States filed a pre-Answer Motion to Dismiss on August 28, 2014.  Id., Dkt. 23.

10.     Defendant's Motion to Dismiss was granted in part and denied in part in a Decision and Order dated February 4, 2016.  Id., Dkt. 65.

11.     Defendant filed an Answer to Plaintiff's Complaint on February 18, 2016.  Id., Dkt. 66.

12.     Initial disclosures, Interrogatories, Requests for Production of Documents and various other voluminous discovery were exchanged among the parties.

13.     At the same time, an action stemming from the same incident was brought against various other defendants in the New York State Supreme Court for Onondaga County. 2014EF767.

14.     Between the two actions, approximately 60 depositions were taken.

15.     At the conclusion of discovery, Defendant filed a second Motion to Dismiss and Plaintiff filed a Motion for Summary Judgment.  Id., Dkts. 102-103.

16.     Numerous mediations were scheduled with the Defendant herein, the latest being on August 21, 2018.  Although this matter did not settle on August 21, 2018, the parties were able to reach an agreement shortly thereafter.  Id., Dkt. 118.

17.     A global offer of $5,000,000.00 (Five Million Dollars and No Cents) was made to fully and finally settle this matter.

18.     It should be noted that the entirety of the New York State Supreme Court, Onondaga County has been resolved and that the resolution is subject to multiple Confidentiality Agreements.  The Honorable James P. Murphy has Ordered the approval of all settlements stemming from the New York Supreme Court action.

19.     Plaintiff Doe now moves for an Order approving the settlement and/or Wrongful Death Compromise as it pertains to the above-captioned matter.  Similarly, Plaintiff Ben jointly moves for an Order approving settlement and/or for Infant Compromise.

## STATEMENT OF THE CASE

20.     The allegations in this matter are set forth in Plaintiff's Complaint.  5:14-cv-509, Dkt. 1.

21.     In addition, and for the Court's convenience, the following has been asserted in this matter upon information and belief:  The infant plaintiff, Jane Doe, and her mother and sole guardian, Lori Bresnahan, were regular visitors to the Great Northern Mall, as Jane Doe would attend gymnastic classes at a facility located within the Great Northern Mall, known as CNY Gym Centre (at Great Northern Mall).  On or about March 14, 2013 at approximately 7:45 p.m., Jane Doe and her mother, Lori Bresnahan, exited the Mall after a gymnastics class.  They were followed by David Renz, who apparently had been waiting in the door vestibule for a mother and child to exit into the parking lot.  Renz followed the two ladies to the Bresnahan vehicle in the Mall parking lot, and as the ladies entered the car, Renz jumped into the back seat with Jane Doe while holding the ladies at gunpoint.  He then ordered Lori Bresnahan to drive her vehicle to a parking lot on the opposite side of the mall.  While in the parking lot, and while still on Mall property, Renz, after tying both Bresnahan and Jane Doe with zip ties, forcibly assaulted,

battered, raped, sodomized, and otherwise caused significant physical harm to young Jane Doe in the back seat of the Bresnahan vehicle.

After Renz completed the heinous acts with young Jane Doe, he then drove the vehicle off of Mall property to Verplank Road behind the Mall property.  It was apparently clear to both Lori Bresnahan and young Jane Doe that Renz was going to kill or seriously injure each and/or both of them.  Lori Bresnahan attempted to fight Renz in order to save Jane Doe and herself. Renz strangled Lori Bresnahan and then stabbed her multiple times with a knife.  As Bresnahan fought for her life Jane Doe, at her mother's insistence, escaped from the vehicle and ran towards Verplank Road in Clay, New York.  Eventually, Jane Doe was able to catch the attention of several individuals that stopped to help her, and it was a matter of time before the law enforcement officers and medical people appeared.

While young Jane Doe sat in a vehicle on Verplank Road, Bresnahan staggered out of the woods from the area where she was bludgeoned, stabbed, strangled, and beaten, and walked to a place on Verplank Road where she dropped to ground, and died as young Jane Doe watched.

At the time that this occurred, Renz was ordered on pre-trial supervision from the Northern District of New York, Federal District Court, while he awaited trial for multiple counts of possession of child pornography.  He had been fitted with a GPS ankle monitor and he was ordered to be under the custody, control, and monitoring of the United States Probation Department for the Northern District of New York.  From January 11, 2013 to March 14, 2013, Renz's GPS ankle monitor had issued some 46 different alerts, with the large majority (if not all) of the alerts insufficiently followed up on by the supervising probation officer or others. In the weeks leading up to this event, Renz had gone out to several stores to buy a hunting knife, a pellet gun that looked like a real Beretta gun, zip ties and children's stockings that he intended to

and did use on young Jane Doe at the time of the vicious sexual assault and battery.  Renz had

also successfully removed the ankle monitor, an ET1 manufactured by BI, Inc., and replaced it

on his legs on multiple occasions during his supervised release with no follow up or

repercussions by probation officers employed by the Northern District of New York.

Additionally, the probation department for the Northern District of New York deferred all

immediate notifications of GPS ankle monitor tamper alerts unless the alert remained "open" for

longer than 5 minutes.  This was allegedly done because the Northern District of New York felt

it was receiving too many tamper alerts, many of which it believed were "false" tampers.  These

actions, Plaintiffs have alleged, constituted a violation of the Northern District of New York's

required protocols as well as violations of mandatory duties outlined in the *Guide to Judiciary*

*Policy,* Vols. 8C and 8F, and specifically *Monograph 113.*

      Jane Doe was adopted by and was the only child of Lori Bresnahan, a single parent.  By

all accounts from witnesses, Lori Bresnahan was a wonderful mother who treated her child with

great love and respect, and saw that she was well educated, and full understanding of all of the

societal rules and regulations that exist throughout Upstate New York.  In short, she was a

remarkable mother.

      As a result of the kidnapping and vicious rape, Jane Doe was taken to the Upstate

Medical Center Hospital at 750 East Adams, Syracuse, New York by ambulance.  She underwent

significant and traumatic treatment and/or surgeries as a result of her injuries which are more

fully outlined (and incorporated by reference) in the Declaration of John Cherundolo, Esq. and/or

Sheila Ben, Esq.

22.     It should be noted that Lori Bresnahan was forced to watch and listen as Jane Doe sustained her injuries at the hands of Renz and the Defendants, thereby incurring Zone of Danger damages.

23.     Additionally, and with regard to the damages sustained by Lori Bresnahan, Plaintiff Doe asserts the following:

a.     Lori Bresnahan's Death Certificate is annexed hereto as **Exhibit D.**  Her time of death is recorded as 9:54 p.m. on March 14, 2013.  The cause of death is listed as multiple stab wounds to head and chest;

b.     The aforementioned is confirmed by an autopsy report of Ms. Bresnahan. The report speaks for itself.  **Exhibit E;**

c.     These records indicate that although Ms. Bresnahan and Jane Doe were kidnapped/carjacked at approximately 7:45 p.m., Bresnahan's time of death was at least two hours later;

d.     During that time and prior to her death, Lori Bresnahan experienced unimaginable conscious pain and suffering, which is evidenced by the Record.  For instance, after Lori Bresnahan fought off David Renz while he was strangling and stabbing her, she ordered Jane Doe to "run for your life."  Lori Bresnahan managed to escape Renz and made it to the roadway where Jane Doe was being sheltered in an innocent bystander's vehicle, where she ultimately collapsed in the view of her only child.  **Exhibit F,** Deposition excerpt of Trooper Issakainen;

e.     Lori Bresnahan also experienced fear of impending death, stating to Jane Doe that "I will see you in heaven" prior to losing consciousness.  **Exhibit G,** Deposition excerpt of William Cregg; and

f.     Lori Bresnahan also experienced zone of danger and/or negligent infliction of emotional distress damages by being forced to listen and watch as her ten year old daughter was violently raped before her and while she was rendered helpless by being bound with zip ties applied by Renz.  Further, there came a fearful and harrowing time during the carjacking when it was clear to Lori Bresnahan that if she did not fight Renz, both she and her daughter would be murdered.

24.     As can been seen, the Decedent and her Estate has experienced significant personal injuries resulting in pain and suffering, death, pecuniary loss, as well as loss of guidance, fear of impending death, and emotional distress.

## The Retainer Agreement and Attorneys' Work

25.     The retainer agreement dated March 4, 2014 (*see* Exhibit C) permits Williams & Rudderow, PLLC to recoup disbursements expended in the furtherance of this litigation from the Client's Share of the recovery.  It further permits the recovery of one third and/or 33 1/3 percent as attorney's fees from any recovery on behalf of the Plaintiff.   However, under 28 U.S.C. §2678, attorney's fees are limited to 25% of the recovery.

26.     Plaintiff Ben has a separate Retainer Agreement with the Cherundolo Law Firm for the prosecution of Jane Doe's claims, which is annexed to Plaintiff Ben's papers joining this motion.

27.     Williams & Rudderow, PLLC and the Cherundolo Law Firm have agreed to share any attorney's fees in a 50/50 capacity after the recoupment of both firm's disbursements. Therefore, the Plaintiffs will bear no additional fees as a result of this proposed global settlement.

28.     Prior to the commencement of the above-captioned matter, considerable attorney's work had been done that included: traveling to and meeting with the Plaintiff; consulting with the Plaintiff regarding the occurrence; researching potential defendants and causes of action;  obtaining, reviewing, and analyzing extensive reports and materials from the AOUSC, NDNY, and other entities; retaining multiple experts to assist with the investigation and prosecution of this action (including a federal probation expert, a premises expert, a product liability expert, medical experts, psychological experts, and an economist);  traveling to crime scenes and other locations; and numerous meetings and/or communications with the Cherundolo Law Firm and other potential witnesses.

29.     Once the actions were commenced, additional and significant attorneys' work continued that included:   drafted and reviewed correspondence between counsel, parties, and others;  drafted, filed, and served a Summons and Complaint; opposed Defendant's pre-Answer Motion to Dismiss; reviewed Answer of Defendant; drafted and reviewed Initial Disclosures, including supplementations, for all parties; drafted and reviewed extensive Interrogatories for all parties;  drafted and reviewed voluminous Requests for Production of Documents, as well as responses from Defendants; participated in various status updates and/or conferences with the Court regarding discovery progress; attended an inspection of the ankle monitor worn be Renz; continuously consulted with the retained experts; participated in various and numerous conference calls and communications with counsel for parties; drafted and served various 30(b)(6) notices; participated in approximately sixty (60) depositions (a number of which were not local to Upstate New York but in Florida, Colorado, Indiana, and Pennsylvania, etc.); drafted multiple expert disclosures; reviewed Defendant's expert disclosures; drafted and filed an extensive summary judgment motion, including a reply brief;  reviewed and opposed

Defendant's second motion to dismiss; prepared multiple mediation submissions; participated in mediations; obtained and reviewed exhaustive medical records for the Decedent and Jane Doe; investigated and located potential witnesses for both damages and liability aspects of the case; obtained and reviewed voluminous documentation (hundreds of thousands of pages) from the AOUSC and/or the NDNY and/or the United States, as well as B.I., Inc.; obtained the Decedent's tax returns; obtained the Decedent's personnel file; performed online research with regard to news reports;  conducted extensive legal research with regard to legal issues that did or might have presented; and engaged in constant communication with the Plaintiff, Susan Doe, regarding strategy and status of the above-captioned matter.

## PROPOSED SETTLEMENT

30.     As a result of all of the foregoing, it is respectfully requested that the Court grant an Order approving the settlement in this case in the aggregate amount of Five Million Dollars and No Cents ($5,000,000.00) payable to the Plaintiffs by the Defendant.

31.     Based on the injuries of the Decedent and Jane Doe, the nature of the events, and weighing the respective potential liability of the various defendants in these actions, we respectfully submit to the Court that the settlement as proposed at this time is fair and reasonable under the circumstances and is in the best interest of the Estate and Jane Doe.

32.     As part of pursuing the lawsuit against Defendant, the parties had one full day of mediation in Rochester, New York with James Morris, Esq. Although the matter did not settle at the mediation, the parties subsequently continued to work toward a settlement.  As a result of said discussions, we can now represent to the Court that the case has now been settled upon the terms and conditions as set forth in this Declaration and supporting papers.

33.     Plaintiff has weighed the impact and cost of ongoing litigation, the respective potential liability of the Defendant, and the risks of a Bench Trial.  Plaintiff's counsel felt that, and recommended same to Plaintiff, that this amount was fair and appropriate to settle against all Defendants.  This is especially so considering the prior settlements and/or Orders of the Hon. James P. Murphy regarding the New York State Supreme Court action.

34.     The Plaintiff was present through all aspects and decisions made during this matter and agreed with the settlement amount and recommendations made by counsel.

35.     The Retainer Agreements in conjunction with 28 U.S.C. §2678 permit the recovery of one fourth or 25% of the gross recovery as a legal fee after the recoupment of disbursements.  The agreements between Williams & Rudderow and the Cherundolo Law Firm permit the two firms to split any attorney's fees awarded to be split equally and for each firm to recoup any expenses laid out.

36.     In pursing this case to date, the Cherundolo Law Firm and Williams & Rudderow have expended significant funds to pursue this case to a fair and successful conclusion.  Many of the costs have been previously recouped via prior settlements in the New York State Supreme Court action.

37.     A true and correct copy of the ledger of any remaining expenses (amounting to $14,286.91) incurred by the law firm of Williams & Rudderow is annexed hereto as **Exhibit H.** A true and correct copy of the ledger of expenses that were incurred by the Cherundolo Law firm (amounting to $3,064.52) is annexed hereto as **Exhibit I**.

38.     It is submitted that each law firm recoup their respective disbursements from the settlement and as permitted by the Retainer Agreements, said disbursements totaling $17,351.00.

The disbursements are taken off the gross settlement amount, therefore resulting in a higher net to the client.

39.     Plaintiff has been advised of these costs throughout the course of this litigation. The expenses have been necessary in the prosecution of this action and closely evaluated throughout.

40.     Further, the Retainer Agreements annexed hereto and signed by the Plaintiff permit recovery of the disbursements as set forth in the preceding paragraph.

41.     Gross proceeds after disbursements amount to $4,982,648.57.

42.     Attorney's fees reflective of the 25% of recovery set forth by statute amounts to $1,245,662.14.

43.     It is submitted that both Williams & Rudderow and the Cherundolo Law firm recoup $622,831.07 out of the aforementioned attorney's fees reflective of the equally payable legal fee agreed upon by the firms.

44.     The Net to Client after disbursements and attorneys' fees will be $3,736,986.43.

45.     Pursuant to NY EPTL §5-4.6(a), Plaintiff may bring this matter before the court in which the wrongful death action is pending, here the District Court for the Northern District of New York.  Once approval of disbursements, fees, and other matters are approved, Plaintiff will then move the Surrogate for the County of Onondaga for an allocation and distribution of the net settlement to the Estate.

46.     It should be noted that Jane Doe was Lori Bresnahan's only daughter and the sole distributee.  Susan Doe requests no commission or other fee for her role as the Executrix of the Estate and the Guardian of Jane Doe.

47.     It should be noted that Plaintiff Doe attempted to structure a portion of the proceeds due as the Net Client payment.  However, the Defendant has prohibited Plaintiff Doe's structure consultant to work with the Defendant's structure consultant and has advised Plaintiff that allowing her consultant to work with the Defendant's is allegedly against DOJ policy.

48.     The option of structuring a portion of the Net Client proceeds was being explored to protect the Estate's and/or Jane Doe's funds from market fluctuations that may be experienced by a Trust as structured settlements are guaranteed yields regardless of market fluctuations.

49.     The Defendant's decision to disallow Plaintiff Doe's structure consultant to work with the Defendant's has eliminated the option of a structure as Plaintiff cannot protect herself and/or verify the accuracy of what the Defendant has proposed in terms of a structure.

50.     Plaintiff requests that this Court Order the Defendant to permit Plaintiff's structure consultant to share the fees with Defendant's structure consultant so that Plaintiff may have the proposals reviewed by a consultant of her choice.  If this Court cannot Order the Defendant to allow Plaintiff Doe's structure consultant to work with the Defendant's, Plaintiff Doe intends to place all proceeds into an already formed and court approved Trust for the protection of Jane Doe.  If the Court deems it necessary, a copy of the Trust will be produced.

51.     Your declarant would further respectfully request that the Court grant, upon such payments, as set forth above, and in accord with the settlement proposed, such powers as may be necessary to sign, effectuate and deliver such agreements, documents or other items to assure that the settlement in this case would be fully effectuated, to Plaintiff Doe as the Executrix of the Estate of Lori Bresnahan, Williams & Rudderow, Sheila Ben, Esq., and the Cherundolo Law Firm and that the settlement proceeds be paid as set forth in the Declaration of Susan Doe, this Declaration, and the Proposed Order.

52.     It is further requested that Susan Doe as the Executrix of the Estate be permitted to execute any general release or other documents necessary to formally complete the resolution of this matter, and to otherwise file, deliver, and exchange such documents as will fully and finally resolve this matter and all details.

53.     A copy of the Defendant's Proposed Settlement Agreement is annexed hereto as **Exhibit J** for the Court's review.  It should be noted that two agreements have been annexed: one agreement that encompasses an all cash payment to the Plaintiff and another that includes the option of a structure to the Plaintiff.

**WHEREFORE,** it is respectfully requested that the relief requested herein, along with that contained in the Declaration of Susan Doe and any joining papers submitted by Sheila Ben, Esq., and the submitted Proposed Order for Wrongful Death and Infant Compromise be Ordered, or for whatever and further relief this Court deems just and appropriate.

Dated:  November 26, 2018                               */s/ Michelle Rudderow*_____
                                                                            Michelle Rudderow