UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**Sheila K. Ben, Esq., as Court Appointed Guardian of the Property of JANE DOE, (an infant proceeding under an assumed name), an Infant under the Age of 14,**

*Plaintiff,*

vs.

**THE UNITED STATES OF AMERICA,**

*Defendant.*

Case No.:
5:14-CV-0370 (CJS)

**Action No. 1**

---

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**DECLARATION**

---

**SUSAN DOE, (a Guardian and Executrix proceeding Under an assumed name) as Executrix of the Estate of Lori A. Bresnahan, Decedent,**

*Plaintiff,*

vs.

**THE UNITED STATES OF AMERICA,**

*Defendant.*

Case No.:
5:14-CV-509 (CJS)

**Action No. 2**

---

STATE OF NEW YORK       )
COUNTY OF ONONDAGA )       ss.:

John C. Cherundolo, being duly sworn, deposes and says as follows:

1.       I am an attorney duly licensed to practice in the State of New York, and am a
partner in the law firm of Cherundolo Law Firm, PLLC, attorneys for the plaintiff Sheila K. Ben,

Esq., as court-appointed guardian of the property of Jane Doe (an infant proceeding under an assumed name, who at the time of the circumstances arising out of this case was 10 years old on March 14, 2013).

    2.     I submit this Declaration in support of the Joint Motion to approve the Infant and Wrongful Death Compromise in the above-referenced captioned matters.

    3.     This action deals with the personal injuries of the infant Plaintiff herein, when she was physically and sexually assaulted on or about March 14, 2013. Plaintiff herein respectfully requests Court approval of an agreed settlement as against the United States of America, in the total amount of Five Million ($5,000,000.00) Dollars, to be paid by the Defendant to the Plaintiffs in the two above consolidated actions.

    4.     The Plaintiff Sheila K. Ben, Esq., was appointed as the Court appointed Guardian of the Property of the infant Plaintiff, Jane Doe by Decreed dated April 25, 2013 in this matter by the Surrogate's Court of the County of Onondaga, State of New York, Honorable Ava Raphael. Said Decree is attached hereto and marked as **Exhibit "A"**.  Thereafter, an Amended Decree was issued by the Surrogate's Court of the County of Onondaga, State of New York, Honorable Ava Raphael, dated April 29, 2015.  A copy of said Amended Decree is attached hereto and marked as **Exhibit "B"**.

    5.     The infant Plaintiff herein was the adopted child of Lori Bresnahan, deceased, who was kidnapped, assaulted, and murdered by David Renz, an individual charged with multiple felony child pornography crimes, who at the time was placed on confinement with a GPS ankle bracelet, pursuant to the order of District Court Judge Andrew T. Baxter. At the same time, the infant was also kidnapped, assaulted and sexually assaulted, and as a result sustained severe and permanent injuries at that time.

6.      At the time of her death, the mother of the infant child was forty-seven years old, having been born on September 3, 1965.

7.      The deceased, Lori Bresnahan, a single adult, adopted Jane Doe from China when she was approximately one-year old and Jane Doe was Lori's only child. They had a very loving, full, and complementary mother-daughter relationship.

8.      The injuries that resulted in the decedent's death were sustained on March 14, 2013 in Clay, New York. The injuries sustained by Jane Doe were also sustained on March 14, 2013 in Clay, New York. The facts and circumstances surrounding Lori's death and the infant plaintiff's irreparable injuries are outlined in the Summons and Complaint and as further outlined below.

9.      The infant plaintiff in this case and her mother and sole guardian, Lori Bresnahan, were regular visitors to the Great Northern Mall, inasmuch as young Jane Doe would attend gymnastic classes, and participate in gymnastics competitions, at a facility located within the Great Northern Mall, known as CNY Gym Centre (at Great Northern Mall).

10.      On or about March 14, 2013, young Jane Doe had completed her gymnastics for the evening, and she and Lori Bresnahan were then ready to leave from the Mall to go home. They walked outside of the CNY Gym Centre and left the Mall through the exit doors near the Piano and Organ Store, somewhere around 7:45 p.m., at which time they were followed by David Renz.

11.      Renz followed the two ladies to the vehicle owned by Lori Bresnahan that was in the Mall parking lot outside of the Piano and Organ store, and as the ladies entered the car, Renz jumped into the back seat with young Jane Doe, holding the ladies at gunpoint. He then ordered Lori Bresnahan to drive her vehicle to the parking lot on the opposite side of the mall, where

there were a number of vehicles that were lined up that were being stored for an automobile sales store that was close to the Mall property. While in the parking lot, and while still on Mall property, Renz, after tying both Bresnahan and Jane Doe with garbage bag ties, forcibly assaulted, battered, raped, sodomized, and otherwise caused significant physical harm to young Jane Doe in the back seat of the Bresnahan vehicle.

12.     After Renz completed the vicious and wrongful acts with young Jane Doe, he then drove the vehicle out of the Great Northern Mall and onto Verplank Road. In a desolate and deserted part of Verplank Road, he turned the Bresnahan vehicle off the road to go into an abandoned field, at which time the car apparently got stuck in mud just off of the highway. It was apparently clear to both Lori Bresnahan and young Jane Doe that Renz was going to kill or seriously injure each and/or both of them. Renz then began struggling with Bresnahan first strangling her, and then stabbing her with a knife. As Bresnahan fought for her life, Jane Doe at her mother's insistence, escaped from the vehicle and ran towards Verplank Road. Eventually, she was able to catch the attention of several individuals that stopped to help her, and it was a matter of time before the law enforcement officers and medical people appeared.

13.     While young Jane Doe sat in a vehicle on Verplank Road, Bresnahan staggered out of the woods from the area where she was bludgeoned, stabbed, strangled, and beaten, and walked to a place on Verplank Road where she dropped to ground, and died as young Jane Doe watched.

14.     Before Renz had kidnapped and went on to perform the vicious and malicious intentional acts that he did at the Mall that evening, he had followed another mother and daughter out of the door leaving from the gymnastics area, with the same plot in mind. That attempt failed.

15.     Renz at the time, was on pre-trial supervision from the Northern District of New York, Federal District Court, awaiting trial for multiple counts of child pornography.  He had been fitted with an ankle GPS-monitoring bracelet that was to be worn on his ankle, and he was ordered to be under the custody and control and monitoring of the United States Probation Department for the Northern District of New York.  From January 11, 2013 to March 14, 2013, Renz's GPS-tracking bracelet had issued some 46 different alarms, only one of which was followed up with in any way by the supervising probation officer or others.

16.     In the weeks leading up to this event, Renz had gone out to several stores to buy a hunting knife, a pellet gun that looked like a real Beretta gun, garbage ties and children's stockings that he would intend to use, and did use on young Jane Doe, at the time of the vicious sexual assault and battery.

17.     On the evening of March 14, 2013, David Renz arrived at Great Northern Mall at some time shortly after 7:00 p.m.  In his deposition taken at Wende Correctional Facility, Renz testified that he waited in or about the area of a vestibule near the Piano and Organ store, looking for some of the gymnastics girls to come out of the gymnastics school.  Renz then, after not being able to kidnap and go forward with his plan with another adult with child, followed Lori Bresnahan and infant child through the exit doors into a darkened area of the parking lot outside of the Piano and Organ Store, all the time intending to kidnap the ladies, sexually molest the infant child, and seriously injure or kill the mother and/or infant daughter.

18.     Renz had admitted using the black (pellet) handgun during the commission of the offense, and as stated before, ordered Bresnahan to a portion of the parking lot that is alleged to have even less lighting than the portion of the parking lot that was just outside the Piano and Organ Store.

19.     When Bresnahan reached the location of the parking lot that she was ordered to drive to, Renz then bound her in the front seat and the daughter in the back using garbage bag ties that he had recently purchased from a local store. He then sexually assaulted the infant plaintiff Jane Doe in the back seat, raping and sodomizing her and otherwise physically assaulting her, causing fear, terror, tremendous serious personal injuries, pain, and suffering together with emotional upset and mental distress. While he was performing the sexual assault and battery upon the infant child, Lori Bresnahan at all times was tied to the front seat of the vehicle with garbage ties, such that she could not move, free herself, or otherwise help her child.

20.     After Renz had finished sexually assaulting the infant child, he then drove the two ladies from the Mall parking lot to Verplank Road. He then turned the vehicle into a small side road, in an area.

21.     The infant child, Jane Doe, had been adopted by and was the only child of Lori Bresnahan, a single parent, and the two ladies lived together as mother and daughter. By all accounts from witnesses, who knew Lori and the child, Bresnahan was a wonderful mother, who treated her child with great love and respect, and saw that she was well educated, and full understanding of all of the societal rules and regulations that exist throughout Upstate New York. In short, she was a remarkable mother.

22.     As a result of the kidnapping and vicious rape, young Jane Doe was taken to the Upstate Medical Center Hospital at 750 East Adams, Syracuse, New York by ambulance. She had bled profusely, both at the scene and during the trip. Hospital care providers have said she was close to death with the very serious and catastrophic injuries that she had as a result of David Renz.

23.      Surgery was ordered, and the child underwent emergent surgery to repair a series of tears, lacerations, and other injuries to her cervix and vaginal area and to the areas surrounding the areas where Renz had carried out the serious sexual assault.

24.      At the time of initial treatment, young Jane Doe was unaware that her mother, and only parent, Lori Bresnahan had been killed.  It was only sometime after admission to the hospital that she was told that her mother had died in the assault. Jane Doe at that point, had instantly become an orphan for the second time in her life.

25.      The Cherundolo Law Firm, PLLC, has been actively involved in all aspects of the litigation in this matter. There have been many depositions, Court appearances, and many meetings and telephone conferences. There has been extensive investigation into the matter.  I have met with and talked with many of the witnesses of the crime, and many of the first responders at the scene, and have also been actively involved in steering the focus of the action with my Co-Counsel, Sheila K. Ben, Esq.  I have spoken with experts and met with counselors, witnesses, physicians, extended family members of Ward, and a host of other witnesses that we intended to produce for testimony at the time of trial, all in the process of preparing the case for trial, all in the interest of my Charge, Jane Doe, the infant.  I have reviewed Interrogatories and have participated in the Answers to Interrogatories and have been present for each of the over 60 depositions that have taken place in this and related matters in and outside of New York State.  I have spoken with family, friends, teachers, doctors, or care providers, first responders and a host of other real or potential witnesses in this case, all in the preparation of getting the case ready for trial. I have compiled extensive documentation regarding Lori's Bresnahan's work history, financial history, family history, and in all aspects of preparing the matter for trial, and to gather information for use as evidence for the use and benefit of the infant Plaintiff Jane Doe.

26.     After over four (4) years of intense litigation, investigation and discovery, 1, along with Robin Zimpel-Fontaine, Esq. and Sheila K. Ben, Esq., together with Counsel that was representing the Estate of Lori Bresnahan, and the Court Appointed Guardian of the Person of the infant Plaintiff attended a continuation of a Mediation in August, 2018. The purpose of the mediation was to attempt to negotiate a settlement with the Defendant, The United States of America. Before, during and after the actual mediation, I talked at great length with Co-Counsel Sheila K. Ben, Esq., as well as attorneys Robert Williams and Michelle Rudderow, and Susan Doe concerning all of the risks and rewards of going forward with litigation and possible trial, or the possible settlement of the case as against the Defendant. We also discussed the benefits of a settlement at this point of the litigation, taking into consideration all other aspects of this case and related cases together.

27.     The settlement as proposed will settle all claims against the Defendant in this action, The United States of America. With this final settlement approved, the potential of Jane Doe having to testify at deposition or trial is now eliminated, as is the possibility that she may have to undergo physical and mental and/or psychological examinations. Based on discussions with our expert psychologists, and her treating psychologist, it is in the interest of the infant child to settle the case before such intrusive examinations are necessary. Additionally, it is believed that the amount of the settlement is fully fair and reasonable under the circumstances.

28.     At the time of Lori Bresnahan's death, Jane Doe was the only living heir to the deceased, and Jane Doe continues to be the only person that is able to take through the Estate or otherwise with regard to the injuries and death of Lori Bresnahan, and for her own individual injuries. Jane Doe is the sole beneficiary of the Estate of Lori Bresnahan.

29.     On or about May 3, 2013, a retainer agreement was signed a copy of which is attached hereto and marked as **Exhibit "C"**. The Retainer Agreement reflects that The Cherundolo Law Firm, PLLC would be entitled to recovery of their disbursements advanced to litigate this matter and 33 1/3 percent of any net proceeds as and for compensation for the work and effort, as well as the risk involved, in the instant lawsuit and others. It is our understanding that pursuant to the Federal Tort Claims Act, the attorney's fees in this action are limited to twenty-five percent (25%) of any recovery. Therefore, it is my understanding that my firm, the Cherundolo Law Firm, PLLC and Williams & Rudderow will receive to gross fees in this matter of twenty-five percent (25%) of any recovery to be split equally between the two firms as and for attorneys' fees.

30.     The expenses and work done in this (and related) matters by all of the attorneys are and have been uniquely time consuming and expensive. I am fully familiar with the costs of travel, experts, transcripts, investigation, and preparation for trial of this matter, as well as other related time and costs and disbursements. The time element involved has been enormous, but all reasonable and necessary under the circumstances. Many of the previous costs and disbursements have been recouped from any prior settlement, leaving the total amount of outstanding costs and disbursements at this time to total Seventeen Thousand Three Hundred Fifty-One and 43/100 Dollars ($17,351.43), with Fourteen Thousand Two Hundred Eighty-Six and 91/100 Dollars ($14,286.91) advanced by Williams & Rudderow and Three Thousand Sixty-Four and 52/100 Dollars ($3,064.52) advanced by the Cherundolo Law Firm, PLLC. All of these costs were needed to prepare the case appropriately and were necessary and reasonable under the circumstances in order to best position this case for trial, to not just prove our case, but to

determine the full facts of how it came to be that Lori was murdered and the infant Jane Doe was assaulted, sexually assaulted and viciously raped and seriously injured.

31.     Therefore, it is respectfully requested that the Court approve all that all costs be recouped by the Cherundolo Law Firm, PLLC and Williams & Rudderow from the offered amount of Five Million Dollars ($5,000,000.00) of settlement proceeds in the event this settlement is approved.

32.     As a result of all of the foregoing, it is respectfully requested that the Court approve the Wrongful Death and Infant Compromise as offered and as set forth as follows, and that the Court approve the distribution of the settlement proceeds as follows:

a.     That Fourteen Thousand Two Hundred Eighty-Six and 91/100 ($14,286.91) Dollars be paid to the firm of Williams & Rudderow to reflect their disbursements spent to date;

b.     That Three Thousand Sixty-Four and 52/100 ($3,064.52) Dollars be paid to the Cherundolo Law Firm, PLLC to reflect their disbursements spent to date; and

c.     Of the remaining amount Four Million Nine Hundred Eighty-Two Thousand Six Hundred Forty-Eight and 57/100 ($4,982,648.57) Dollars, that 1/4 or 25% of the settlement proceeds be paid to Williams & Rudderow, PLLC and the Cherundolo Law Firm, PLLC to be split equally per the agreement between the two law firms. The total attorneys' fees thus totaling One Million Two Hundred Forty-Five Thousand Six Hundred Sixty-Two and 14/100 ($1,245,662.14) Dollars.  Pursuant to the agreement between the two law firms, it is respectfully requested that the Court approve the distribution among the firms such that the sum of Six Hundred Twenty-Two Thousand Eight Hundred Thirty-One and 07/100 ($622,831.07) Dollars be ordered to be paid to each of the participating Law Firms. Of the amount of Six

Hundred Twenty-Two Thousand Eight Hundred Thirty-One and 07/100 ($622,831.07) Dollars

paid to the Cherundolo Law Firm, PLLC, it is respectfully requested that the amount of Three

Hundred Eleven Thousand Four Hundred Fifteen and 53/100 ($311,415.53) Dollars be

distributed to the Cherundolo Law Firm, PLLC and that the remaining amount of Three Hundred

Eleven Thousand Four Hundred Fifteen and 54/100 ($311,415.54) Dollars be paid to Sheila K.

Ben, Esq., in full and final satisfaction of all work done as co-counsel and Court Appointed

Guardian of the property of the infant Jane Doe, all in accord with the agreement between my

office, the Cherundolo Law Firm, PLLC, and Sheila K. Ben, Esq.

     33.    Of the remaining Three Million Seven Hundred Thirty-Six Thousand Nine

Hundred Eighty-Six and 43/100 ($3,736,986.43) Dollars, which reflects the net settlement to

Susan Doe as the Executrix of the Estate of Lori Bresnahan and to Sheila K. Ben, Esq. as the

Guardian of the Property of Infant Plaintiff, Jane Doe, it is respectfully requested that the

following be approved and/or Ordered.

     34.    Due to the Defendant's unwillingness to allow our structure consultant to work

with theirs, it is respectfully requested that the Court grant an Order such that the total of the

remaining net proceeds of three Three Million Seven Hundred Thirty-Six Thousand Nine

Hundred Eighty-Six and 43/100 ($3,736,986.43) Dollars be placed into the already existing and

active Trust for the sole benefit of Jane Doe. If this Court is able to Order the Defendant to allow

our structure consultant to work with the Defendant our office would agree to the request of

Susan Doe, the Executor and Guardian of the infant child, to consider structuring a portion of the

settlement.

     35.    The above-referenced existing Trust is annexed to the Declaration of Michelle

Rudderow, Esq. is incorporated by reference.

36.     Both my firm, the Cherundolo Law Firm, PLLC, Sheila K. Ben, Esq. and Williams & Rudderow have thoroughly researched whether there are any liens that might attach to this settlement, and it is submitted to the Court that there are no liens asserted against the Estate of Lori Bresnahan or her Executrix, nor are there any liens against any of the proceeds that are being paid to the infant Plaintiff. It is also submitted to the Court that after the lawyers in this matter have done appropriate due diligence and a thorough search, that there are no creditor claims against any of the proceeds being paid in this matter either against the Bresnahan Estate, the Executor of the Estate, or as against the infant child.

37.     Based on all of the above, there is no request that Sheila K. Ben, Esq. receive any additional fees or other compensation for her role as the Court appointed Guardian of the Property of the infant child other than the requested fees as set forth above.

38.     After the Law Firms have conducted a due diligent search, there are no known assignments, creditor claims, compensation claims, or filed liens, or any other claims of any kind as against the assets of the Estate with the Onondaga County Surrogate related to this Estate.

39.     Based on the due diligence of the attorneys and a thorough search, prior to this incident, neither the decedent Lori Bresnahan nor the infant child, Jane Doe were the recipients of public assistance in any form.

40.     No previous application has been made for the relief sought herein.

41.     Therefore, it is respectfully requested that this Court grant an Order to compromise and settle all actions and proceedings in the above-named consolidated actions with the only remaining Defendant in this matter, The United States of America, and to fix reasonable attorney's fees, costs and disbursements and order the payment of same as part of the settlement aforesaid, and that the Court further order that the Defendant pay the infant Plaintiff Jane Doe

her share of the settlement proceeds pursuant to the provisions of the law, and to deposit those sums in the trust as outlined in the accompanying affidavits for the sole benefit of the infant Plaintiff Jane Doe, and that the Court further order that the my firm, the Cherundolo Law Firm, PLLC, Sheila K. Ben, Esq. and that Susan Doe, and her attorneys on behalf of the Estate of Lori Bresnahan and the infant child Jane Doe, be empowered to execute such documents and to execute such releases to fully and finally resolve this matter in its entirety, and to take such further action and proceedings as to fully and finally resolve the consolidated matters in this action, together with such other and further relief as might to the Court might seem just and proper.

42.     None of the attorneys or their law firms have become interested in this matter at the instance of the Defendant or anyone acting on the Defendant's behalf, directly or indirectly.

**DATED:**  November ___19th___, 2018.

Respectfully submitted,

_John C. Cherundolo_

Sworn to before me this
19th day of November, 2018.

_Christina M Hayes_
Notary Public

CHRISTINA M. HAYES
Notary Public, State of New York
No. 4930086
Qualified in Onondaga County
My Commission Expires May 9, 20_22_

**DATED:**    Monday, November 19, 2018

                            **CHERUNDOLO LAW FIRM, PLLC**

                            By:   _____

                                   *John C. Cherundolo*

                            *Attorneys for Plaintiff(s)*
                            Office and Post Office Address
                            AXA Tower I, 1st Floor
                            100 Madison Street
                            Syracuse, New York 13202
                            Telephone (315) 449-9500

                            **FAX SERVICE NOT ACCEPTED**

**TO:**

STATE OF NEW YORK
SUPREME COURT        COUNTY OF
_____

,

**Plaintiffs**

v.

,

**Defendants**

_____

**AFFIDAVIT OF
SERVICE BY MAIL**

Index No.

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF ONONDAGA       )

     **Christina M. Hayes**, being duly sworn, deposes and says that deponent is not a party to the within action, is over eighteen (18) years of age and resides in Memphis, NY, New York.

     That on November 19, 2018, deponent served the annexed Declaration on the following:

the address designated by said attorneys for that purpose by depositing a true copy of same enclosed in a post-paid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
Christina M. Hayes

Subscribed and sworn to before me
on Monday, November 19, 2018.

_____
     Notary Public